DILLON v. LIFE AND CASUALTY INS. COMPANY

(January 5, 1931. Opinion and Decree.)
(January 19, 1931. Rehearing Refused.)
(March 3, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Chas. J. Mundy, of New Orleans, attorney for plaintiff, appellee.

Harry R. Cabral, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. Plaintiff sued the defendant, an insurance company, for the sum of $1,000 on an accident policy carried by her son, John Stewart, in which she was named as beneficiary. The defendant, admitted the issuance of the policy and that the premiums had been paid promptly, but denied liability, and specially pleaded the following clause contained in the policy:

"The Life and Casualty Insurance Company of Tennessee hereby insures the person named in said schedule against the result of bodily injuries received during the time this policy is in force, and effected solely by external violent and accidental means strictly in the manner hereafter stated, subject to all the provisions and limitations hereinafter contained, as follows:

"If the insured be struck or knocked down or run over while walking or standing on a public highway by a vehicle propelled by steam, cable, electricity, naphtha, gasoline, horse, compressed air, or liquid power, excluding injuries sustained while on a railroad right of way in violation of any statute or of any regulation of the railroad company."

There was judgment in favor of the defendant dismissing the suit. A new trial was applied for and granted, and on the second trial there was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The facts in the case may be stated as follows:

John Stewart, the insured, was killed on February 3, 1929, at a point where the

Yazoo & Mississippi Valley Railroad right of way is crossed by a road known as Cornland Crossing, about one mile from Reserve, La. He was struck by a passenger train about 10 o'clock at night and instantly killed. The only eyewitness to the accident was the railroad engineer, who testified that the train was traveling about 50 miles per hour when the deceased was struck; and that it was only a few seconds after the time he first saw the man ahead of the train when he was struck by the engine and killed.

The road that crosses the right of way at the place where the accident occurred served as a thoroughfare for people who occupied twenty-three residences and a store on one side of the track and fifteen houses and a store on the other side. It was a dirt road and used by vehicular and pedestrian traffic and, at the time of the accident, was maintained neither by the parish of St. John the Baptist nor the state highway department as a public highway.

The evidence is conflicting as to whether or not at the time of the accident there were traffic stop signs provided by the state highway department of Louisiana at this crossing.

There are two issues involved: First, the primary question of interpretation of the above provision of the policy; and, second, a question of fact. We shall discuss these matters in the above order.

The plaintiff contends that the clause of the policy above quoted covers the insured in case he is injured by any of the designated kinds of vehicles while on a public highway or upon the right of way of a railroad if the insured was lawfully there, and that as the deceased was accidentally killed on the crossing of the public highway and right of way of the railroad that the beneficiary is entitled to recover.

Defendant contends that the case falls within that portion of the clause limiting its liability where the injury is sustained on the right of way of a railroad company by an insured unlawfully there; and that if the deceased was there in violation of a statute or the company's regulations there is no liability; and further that if the case is not covered by the above exclusion of liability, plaintiff cannot recover because the deceased was not killed on a public highway but on a private road, having been killed on the crossing.

It is clear and conceded by both sides that where an insured under the provisions of the policy is killed or injured by a vehicle on a public highway, the company would be liable. The difficulty presented is in interpreting the words "excluding injuries sustained while on a railroad right of way in violation of any statute or any regulation of the railroad company."

In the defendant's answer it is averred "that under the terms of the policy, the coverage of the policy was limited as indicated therein and excluded any accident or death while on any railroad's right of way in violation of any statute or any regulation of the railroad company."

We note in this connection that the judge of the lower court first dismissed the plaintiff's suit, but on a second trial rendered judgment in his favor. In his reasons for judgment in interpreting this language, he said:

"That language excludes, not every injury sustained on a railroad right of way, but only such as are so received while the insured is violating a statute or railroad rule. And this exclusion implies the inclusion of injuries received on a railroad right of way without violation of statute or rule."

In short, our learned brother below in

analysing the language of the provision in question came to the conclusion that it was a negative pregnant with an affirmative.

Can it be said that the language in question is to be so construed in connection with the language that precedes it that only accidental injury or death occurring on a crossing between a public highway and a right of way of a railroad company is contemplated? We think not. This would be indeed placing a very narrow and technical construction upon the language of the clause in question against the insured and beneficiary in favor of the insurer. From what has been said it appears that the meaning of this clause is doubtful and ambiguous, and under the well-established rules of interpretation of contracts the doubt and ambiguity must be resolved against the defendant, which was the one that wrote and furnished the contract.

We therefore conclude that the policy covers the case of accidental injury or death occurring on the right of way of a railroad company except where the insured was there in violation of a statute or regulation of the railroad company.

We shall next inquire as to whether the deceased was or was not on the crossing or the right of way of the railroad company in violation of a statute or regulation of the company. The burden of establishing this special defense was upon the defendant. It has not introduced in evidence any regulation of the company showing that the insured was prohibited from using the crossing and the right of way of the railroad company at or near the place where he was killed. Our attention has not been called by the defendant to any statute forbidding the deceased from being at or near the crossing or upon the railroad company's right of way at the place

where he was killed. Under such circumstances the defendant is liable.

For the reasons assigned the judgment appealed from is affirmed, at appellant's cost.

JANVIER, J. (dissenting). I cannot see that the provisions of the policy are ambiguous in the slightest degree. The insured is within the coverage thereof if, and only if, he be struck or knocked down or run over "while walking or standing on a public highway."

Such words need no interpretation.

Let me repeat that, in the words of the policy itself, the defendant becomes liable if and only "if the insured be struck or knocked down or run over while walking or standing on a public highway."

The policy also provides that there shall be excluded, even from this limited coverage, "injuries sustained while on a railroad right of way in violation of any statute or of any regulation of the railroad company."

Since, then, there can be no recovery under the policy unless the insured was struck or knocked down or run over while walking or standing on a public highway, the burden rests on plaintiff to show that, at the time of the accident, the insured was on a public highway. In other words, the burden is on plaintiff, who seeks to recover under an accident policy, to show that the injuries were sustained under circumstances within the coverage of the policy. See Faulk v. Mutual Life Ins. Co., 160 La. 529, 107 So. 395; Webster v. N. Y. Life Ins. Co., 160 La. 854, 107 So. 599; Corpus Juris, vol. 1, Accident Insurance, sec. 284.

Plaintiff has failed to sustain this burden.

The trial court found that the insured "was walking on the track ahead of the

No. 13,557

Orleans

———

train and in the same direction when the engine struck him." In other words, he had left the highway crossing and was walking on the railroad track. The evidence justifies this finding. The only eyewitness, the engineer of the train, says that, at the time the insured was struck, "he was a few feet beyond the crossing." He was, thus, not within the protection of the principal portion of the policy because he was not on a public highway. I am at a loss to understand how it can be contended that the word "excluding" adds to the coverage and protection afforded by the policy. The policy very plainly was designed solely for the purpose of affording accident insurance to pedestrians while on public highways and not otherwise, and it was also intended to except from that coverage accidents which, though occurring on public highways, also occurred on railroad tracks; in other words, at crossings between public highways and railroad tracks if, in going on the railroad track, the insured had violated any rule of the company or any statute. For instance, an assured, while walking along a public highway, is within the protection of the policy. If he attempts to cross a railroad track and, in doing so, violates a statute or a company rule—for example, a statute prohibiting crossing under crossing gates—he then takes himself out of the protection of the policy.

It is said that to so limit the policy makes it almost valueless. My answer is that I am not limiting the policy. That was done by the parties when they made their agreement. Courts are not permitted to make contracts, but only to interpret them after they have been entered into by others. The language of this contract admits of but one interpretation and that one should be accepted.

I therefore respectfully dissent.